# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Demetrius A. Wilson,<br><br>        Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>        Respondents. | No. CV-13-02597-PHX-JAT<br><br>**ORDER** |

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R"), (Doc. 43), recommending that the Court deny Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, (Doc. 1). Also before the Court is Petitioner's Objection to the Report and Recommendation Due to Violation of the Original Plea Agreement and Exhaustion and Seeking Certificate of Appealability for the Following Reasons. (Doc. 53).

**I.  Background**

On August 10, 2009, Petitioner was charged with armed robbery in case number CR2009-151399-001 ("Case 1399") based on an incident that occurred on May 23, 2009. (Doc. 13, Ex. A). On April 14, 2010, Petitioner signed a plea agreement, whereby Petitioner pleaded guilty in Case 1399. (Doc. 13, Ex. B). Pursuant to that agreement, the prosecutor agreed "not to file any additional theft related charges arising from [police report] Mesa DR 2009-1430103." (*Id.*). The Superior Court of Arizona accepted the plea, (Doc. 13, Ex. C), and sentenced Petitioner to the presumptive four year prison term,

1  credited Petitioner with 391 days of presentence incarceration, and imposed community
2  supervision, (Doc. 13, Ex. E).

3        On February 28, 2013, Petitioner was indicted by a grand jury for armed robbery
4  in case number CR2013-001167-001DT ("Case 1167"), based on an incident that
5  occurred on May 12, 2009. (Doc. 13, Ex. F). The indictment referenced a report from the
6  Tempe Police Department. (*Id.*). On August 23, 2013, Petitioner was charged with two
7  counts of armed robbery and two counts of aggravated assault in case number CR2013-
8  004029-001DT ("Case 4029") based on incidents that occurred on May 15 and 19, 2009.
9  (Doc. 13, Ex. G). The charging document in that case referenced two Tempe Police
10 Department police reports. (*Id.*).

11       Petitioner signed plea agreements for Case 1167 and Case 4029 on August 23,
12 2013. (Doc. 13, Exs. H, I). Under both agreements, Petitioner was to serve a prison term
13 of four years, which would run concurrently with his four-year sentence in Case 1399,
14 which Petitioner had already completed. (Doc. 13, Exs. H, I, K).  During a hearing that
15 took place on the date Petitioner signed the agreements, Petitioner's attorney explained
16 that Petitioner had filed motions to dismiss Case 1167 and Case 4029 on the basis that
17 they were covered by the prosecutor's promise in the 1399 plea agreement to not bring
18 any more related charges, but that the plea agreements in Case 1167 and Case 4029 "got
19 the same resolution in a more expedient manner." (Doc. 13, Ex. K at 25–26).

20       On October 9, 2013, the Superior Court sentenced Petitioner to four years
21 imprisonment and gave Petitioner credit for 1,414 days served, which equates to 3.87
22 years. (Doc. 13, Exs. L, M). The court also imposed six months of community
23 supervision.[1] (Doc. 13, Exs. L, M). It is unclear why Petitioner, who had apparently

---

[1] The records state that the community supervision sentences would be imposed "pursuant to A.R.S. § 13-603(I)," which provides the following:

> If a person is convicted of a felony offense and the court sentences the person to a term of imprisonment, the court at the time of sentencing shall impose on the convicted person a term of community supervision. The term of community supervision shall be served consecutively to the actual period of imprisonment if the person signs and agrees to abide by conditions of supervision established by the state department of corrections. Except

- 2 -

finished his four year sentence in Case 1399 prior to being sentenced in Case 1677 and Case 4029, (*see* Doc. 13, Ex. K at 4, 6, 8, 26), was not credited with four full years of time served.

On December of 2013, Petitioner filed petitions for post-conviction relief under Arizona Rule of Criminal Procedure 32, arguing that his conviction in Case 1677 violated the plea agreement in Case 1399 and that the Superior Court erred by sentencing him to six months community supervision in Case 1677. (Doc. 13, Exs. N, O, P, Q). On March 5, 2014, the Superior Court dismissed Petitioner's Rule 32 petition in Case 1399 as untimely, but allowed Petitioner to proceed with this Rule 32 petition in Case 1677. (Doc. 13, Ex. R). On March 10, 2014, however, Petitioner filed motions to dismiss both of his Rule 32 petitions. (Doc. 13, Exs. S, T). Petitioner did not state the reason for the motion; he only stated that he "no longer want[ed] the rule 32 PCR." (Doc. 13, Ex. S, T). The Superior Court granted the motions on March 19, 2014. (Doc. 13, Ex. U).

Petitioner filed the present habeas petition on December 19, 2013, after he filed his Rule 32 petitions but before he moved to dismiss them. (Doc. 1). On April 25, 2014, while his habeas petition was pending, Petitioner finished serving his sentence, including his community supervision. (Doc. 40, Ex. A at 3). On May 13, 2014, however, Petitioner was arrested and charged with burglary, robbery, and theft in case number CR2014-122610-001 based on an incident that allegedly happened that same day. (Doc. 40, Exs. B, C).

The government filed its Limited Answer to Petition for Writ of Habeas Corpus ("Answer") on July 3, 2014, in which it argued, *inter alia*, that the habeas petition is barred because Petitioner did not exhaust his remedies in state court. (Doc. 13). The

---

> pursuant to subsection J, the term of community supervision imposed by the court shall be for a period equal to one day for every seven days of the sentence or sentences imposed.

Ariz. Rev. Stat. Ann. § 13-603(I). Subsection J instructs courts to decrease community supervision calculations "to the nearest month." Ariz. Rev. Stat. Ann. § 13-603(J). Thus, Petitioner's four-year (1440-day) imprisonment sentence results in an automatic six-month community supervision sentence.

Magistrate Judge, recognizing that Petitioner had completed his sentences in Case 1167 and Case 4029, ordered the government to "file a pleading which informs the Court as to the basis for Petitioner's current detention and whether Petitioner's current detention [arose] from Petitioner's 2013 convictions and sentences or an allegation that Petitioner violated supervision imposed in the 2013 matters." (Doc. 38 at 11). The Magistrate Judge further ordered the government to "address whether Petitioner's habeas petition challenging his 2013 convictions and sentences is now moot" as a result of Petitioner's completion of his sentence in the 2013 matters. (*Id.*). In response, the government filed Respondent's Response to this Court's Order of February 3, 2015, explaining that Petitioner was in custody pursuant to CR2014-122610-001, which, as noted above, was based on an incident that occurred on May 13, 2014. (Doc. 40 at 3). The government further argued that Petitioner only challenges his 2013 sentences and not his 2013 convictions, and that his completion of the 2013 sentences therefore moots Petitioner's habeas petition. (*Id.*).

The Magistrate Judge filed its R&R on March 5, 2015, concluding that Petitioner's habeas claims are moot, that Petitioner did not exhaust his state court remedies and therefore procedurally defaulted, and that Petitioner showed no cause for his procedural default. (Doc. 43). The Magistrate Judge therefore recommended that Petitioner's habeas petition be dismissed. (*Id.* at 24). Petitioner objected to the Magistrate Judge's recommendations. (Doc. 53).

## II. Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not

- 4 -

otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made.").

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner was incarcerated based on a state conviction. With respect to the claims Petitioner exhausted before the state courts, under 28 U.S.C. § 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law"[2] or was based on an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Further, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998).

"When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

### III. Discussion

#### A. Mootness

Despite the fact that Petitioner did not object to the Magistrate Judge's mootness

---

[2] Further, in applying "Federal law" the state courts only need to act in accordance with Supreme Court case law. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003)("In attempting to answer [whether the state court applied Federal law in an objectively reasonable manner], the only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams* [*v. Taylor*], 529 U.S. [362], 412 [(2000)]. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Williams*, 529 U.S. at 412 ("The ... statutory language makes clear ... that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.").

- 5 -

conclusion, the Court addresses it because standing is a prerequisite to this Court's jurisdiction. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The Magistrate Judge concluded that Petitioner's petition is moot because he has finished serving his sentence for the 2013 matters and he "has not made any showing of collateral consequences arising from his 2013 convictions." (Doc. 43 at 15). The Magistrate Judge reasoned that a habeas petitioner who has been released from custody must show "some concrete and continuing injury" in order to satisfy the narrow "collateral consequences" exception to the mootness doctrine. (*Id.*)

The Court disagrees with this reasoning. The Supreme Court has made clear that courts are to "presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." *Spencer*, 523 U.S. at 7–8 (citing *Sibron v. New York,* 392 U.S. 40, 55–56 (1968)). This presumption "acknowledge[s] the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Sibron*, 392 U.S. at 55. Accordingly, Petitioner has no duty to prove "concrete" collateral consequences of his custody, and Petitioner's habeas petition is not moot.

### B. Exhaustion

Before this Court may consider the merits of an application for habeas relief, a state prisoner must "exhaust" in state court the claims raised in the petition. *See Coleman v. Thompson*, 501 U.S. 722, 729–30; 735 n.1 (1991); *Castille v. Peoples*, 489 U.S. 346, 349–50 (1989). To properly exhaust his claims in the state courts, the petitioner must afford the state the opportunity to rule upon the merits of each federal constitutional claim by "fairly presenting" the claim to the state's highest court in a procedurally correct manner. *Castille*, 489 U.S. at 351. Importantly, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roentgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille*, 489 U.S. at 351).

Petitioner argues that he exhausted his state court remedies by filing special

actions in the Arizona Superior Court and Arizona Court of Appeals, both of which were summarily denied. (Doc. 53 at 1–3).

This argument fails. On the outset, the Court notes that the record does not reflect the contents of Petitioner's claims in his special actions, so the Court cannot determine whether the special actions presented to the state courts the same issues Petitioner now presents in his habeas petition. But even assuming they did, a special action is an "extraordinary" remedy that "shall not be available where there is an equally plain, speedy, and adequate remedy by appeal." *Rodriguez v. Klein*, No. CV05 3852PHX NVW(JI), 2006 WL 1806020, at *3 (D. Ariz. June 28, 2006) (adopting report and recommendation of Irwin, M.J.) (citing *King v. Superior Court,* 138 Ariz. 147, 149 (Ariz. 1983) (en banc)); Ariz. R. Proc. Spec. Actions 1. Given that "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation," *Roentgen*, 33 F.3d at 38, Petitioner's special actions cannot constitute exhaustion for purposes of § 2254.

### C. Procedural Default

Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file an action for federal habeas relief, it is also satisfied if the habeas petitioner is procedurally barred from pursuing their claim in the state courts. 28 U.S.C. § 2254(c); *Castille*, 489 U.S. at 351; *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996). Thus, if the habeas petitioner's claims are now procedurally barred under state law, the claim is exhausted by virtue of the petitioner's procedural default of the claim. Procedural default occurs when a petitioner has never presented a claim in state court and is now barred from doing so by state court procedural rules. *Castille*, 489 U.S. at 351–52. Here, it is undisputed that Petitioner has procedurally defaulted on his claims because he waived his right to direct appeal by signing the plea agreement and his time to apply for post-conviction relief has long past.

As long as the state's procedural bar provides an independent and adequate state-law basis for upholding the petitioner's conviction and sentence, the federal courts may

1  not, generally, review a procedurally defaulted claim in a petition for federal habeas relief
2  unless the petitioner can demonstrate (1) cause for their failure to follow reasonable state
3  procedures and (2) prejudice arising from their procedural default of the claim. *Gray v.*
4  *Netherland*, 518 U.S. 152, 161–62 (1996) (emphasis added).[3]

5  Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that
6  "some objective factor external to the defense impeded counsel's efforts to comply with
7  the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Objective
8  factors which constitute cause include interference by officials which makes compliance
9  with the state's procedural rule impracticable, a showing that the factual or legal basis for
10 a claim was not reasonably available to counsel, and constitutionally ineffective
11 assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "A petitioner need
12 not allege a constitutional violation in order to establish cause for a procedural default.
13 Nor [is the reviewing court] limited to considering only those actions that fit within
14 previously recognized fact patterns as cause for a procedural default." *Manning v. Foster*,
15 224 F.3d 1129, 1134 (9th Cir. 2000).

16 As explained above, Petitioner initially filed Rule 32 petitions for post-conviction
17 relief, but then moved to voluntarily dismiss them. (Doc. 13, Exs. N, O, P, Q, S, T). The
18 motions did not explain the reason for the motions; they only stated that he "no longer
19 want[ed] the rule 32 PCR." (Doc. 13, Ex. S, T). The Arizona Superior Court summarily
20 granted those motions. (Doc. 13, Ex. U).

21 Petitioner claims that he withdrew his Rule 32 petitions because, when he finished
22 serving his sentence, "A.D.O.C. C.O. III" and a jail librarian told him he "wouldn't be
23 getting released" because his Rule 32 petition was pending. (Doc. 53 at 6); (Doc. 24 at 3).
24 Petitioner claims that "when he found out the C.O. III lied to him," he filed a motion with
25 the Arizona Superior Court stating that he wished to proceed with his withdrawn Rule 32

---

[3] Review is also appropriate if the petitioner demonstrates that habeas review is necessary to prevent a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A fundamental miscarriage of justice occurs only when a Constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id*. Petitioner here makes no argument of actual innocence.

- 8 -

petitions. (Doc. 24 at 3).

These claims fail for several reasons. First, while "interference by officials" is one way a procedurally defaulted habeas petitioner may show cause of his default, such a petitioner must make a "showing" of such interference. *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990). Petitioner here has made no such showing. Rather, he offers only his own unsworn statements that prison officials tricked him into withdrawing his Rule 32 petitions. Petitioner does not even identify the names of the C.O. and librarian who allegedly told him that he needed to withdraw his Rule 32 petitions before he could be released. If a habeas petitioner who has procedurally defaulted could show cause for his default by simply alleging that prison officials talked him out of filing documents, then the cause requirement would have little force.

Moreover, the timing of Petitioner's motions to resume his Rule 32 proceedings put the veracity of his claims of trickery into question. It is clear from the record that Petitioner moved to resume the Rule 32 proceedings not "when he found out the C.O. III lied to him," but when he realized that his habeas petition might be dismissed as a result of his failure to exhaust. Indeed, Petitioner filed the motions over five months after he finished serving his sentence in the 2013 matters and the day after he was ordered to respond to the government's Answer. (Doc. 18; Doc. 13; Doc. 53, Ex. 4).

Finally, except in narrow circumstances not applicable here, Petitioner's failure to pursue post-conviction relief cannot be excused by bad advice from his own attorney—let alone from prison officials. *See Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) ("While ineffective assistance can constitute 'cause' for procedural default, it will only constitute cause if it amounts to an independent constitutional violation." (internal citations omitted) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bonin v. Calderon*, 77 F.3d 1155, 1158 (9th Cir. 1996))); *Graves v. McEwen*, 731 F.3d 876, 878 (9th Cir. 2013) ("There is no general constitutional right to counsel, however, in collateral postconviction review proceedings." (citing *Bonin*, 77 F.3d at 1159)).

In sum, Petitioner has failed to make a "showing of interference by officials"

*Francis*, 894 F.2d at 355, that might constitute cause for his procedural default.[4] Therefore, Petitioner's habeas petition must be denied.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge, (Doc. 43), is **ACCEPTED IN PART AND REJECTED IN PART**, as described herein.

**IT IS FURTHER ORDERED** that Petitioner's objections (Doc. 53) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is **DENIED;** the Clerk of the Court shall enter judgment of dismissal, with prejudice.

**IT IS FURTHER ORDERED** that pursuant to Rule 11 of the Rules Governing § 2254 Proceedings, in the event Movant files an appeal, the Court grants in part and denies in part Petitioner's request for a certificate of appealability. Specifically, the Court grants a certificate of appealability as to the issue of cause for Petitioner's procedural default because jurists of reason could find this Court's ruling on that issue debatable. The Court denies a certificate of appealability as to the issues of mootness and exhaustion because jurists of reason would not find this Court's ruling on those issues debatable.

Dated this 10th day of August, 2015.

James A. Teilborg
Senior United States District Judge

---

[4] Petitioner also argues that "[t]he state waited until I did my prison time in case CR2009-151399-001 and it was to[o] late to file a rule 32." (Doc. 53 at 6). But Petitioner does not challenge his 2010 convictions and sentences, (*see* Doc. 1 at 1 (challenging the judgment of conviction of "Oct. 9 or 11, 2013")), so his failure to exhaust his remedies in the 2010 conviction is not at issue here. Accordingly, the state's alleged acts to prevent Petitioner from pursuing his Rule 32 petition in CR2009-151399-001 are irrelevant.

- 10 -